| | |
|---|---|
| STATE OF SOUTH CAROLINA ) | IN THE COURT OF COMMON PLEAS |
| ) | |
| COUNTY OF CHARLESTON ) | FOR THE NINTH JUDICIAL CIRCUIT |
| | |
| KIMBERLY BEASENBURG, | ) C.A. 2022CP1004574 |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ULTRAGENYX PHARMACEUTICAL, INC. | ) |
| | ) |
| Defendant. | ) |
| | ) |

## ACCEPTANCE OF SERVICE

I, Michael Oliver Eckard of Ogletree Deakins Nash Smoak & Stewart, P.C, Attorney for

Defendant Ultragenyx Pharmaceutical, Inc., do hereby accept service of the Summons and

Complaint in the above-referenced action on behalf of Defendant on this 14th day of October 2022.

I am authorized to accept service of the above-referenced Summons and Complaint. Defendant

shall have 30 days from the date of this Acceptance of Service in which to file an Answer or other

responsive pleading.

Michael Oliver Eckard
S.C. Bar No. 101920
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
211 King Street, Suite 200, Charleston, SC 29401
Telephone: 843-720-0872
Fax: 843-853-9992
michael.eckard@ogletree.com

Dated: _October 14, 2022_____

ELECTRONICALLY FILED - 2022 Sep 30 8:24 AM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004574

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF CHARLESTON | ) | FOR THE NINTH JUDICIAL CIRCUIT |
| | | |
| KIMBERLY BEASENBURG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | SUMMONS |
| | ) | (JURY TRIAL REQUESTED) |
| ULTRAGENYX PHARMACEUTICAL, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this action a copy of which is hereby served upon you, and to serve a copy of your Answer to the Complaint on the subscriber at her office at 4000 Faber Place Drive, Suite 300, North Charleston, SC 29405 within thirty (30) days after the service thereof, exclusive of the day of service.  If you fail to answer the Complaint within the time aforesaid, the Plaintiff in this action will apply to the Court for the relief demanded in the Complaint and judgment by default will be rendered against you.

ELECTRONICALLY FILED - 2022 Sep 30 8:24 AM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004574

Respectfully Submitted,


*s/Bonnie Travaglio Hunt*
Bonnie Travaglio Hunt
Hunt Law LLC
Federal Bar # 07760
SC Bar # 12341
Attorney for the Plaintiff
4000 Faber Place Drive, Suite 300, N. Charleston, 29405
Post Office Box 1845, Goose Creek, SC 29445
(843)553-8709
Facsimile (843)492-5509
bthunt@huntlawllc.com


s/Peter Kaufman
Peter Kaufman
Kaufman Labor & Employment Solutions, LLC
SC Bar #100144
295 Seven Farms Dr. Ste C-267
Charleston, SC 29492
(843)513-6062
pkaufmanlaw@gmail.com

September 30, 2022

ELECTRONICALLY FILED - 2022 Sep 30 8:24 AM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004574

STATE OF SOUTH CAROLINA    )    IN THE COURT OF COMMON PLEAS
            )
COUNTY OF CHARLESTON      )    FOR THE NINTH JUDICIAL CIRCUIT

KIMBERLY BEASENBURG,      )
            )
      Plaintiff,       )
            )
vs.            )    COMPLAINT
            )    (JURY TRIAL REQUESTED)
ULTRAGENYX PHARMACEUTICAL, INC.  )
            )
      Defendant.     )
_____)

The Plaintiff, Kimberly Beasenburg, by and through her undersigned attorneys Bonnie Travaglio Hunt of Hunt Law LLC and Peter M. Kaufman of Kaufman Labor Employment Solutions, LLC, does hereby make the following claims and allegations:

## PARTIES AND JURISDICTION

1. The Plaintiff is a resident of the State of South Carolina. At all times employed with Defendant in Charleston County.

2. The Defendant, Ultragenyx Pharmaceutical, Inc. (hereinafter referred to as City) is business conducting business in and affecting commerce in the State of South Carolina.

3. All parties and events herein mentioned are within the jurisdiction of this Honorable Court.

4. This Court has jurisdiction over the parties and subject matter and venue is proper.

5. When the Plaintiff was hired by the Defendant, she was required to sign a Mutual Agreement to Arbitrate Claims. The Arbitration Agreement is unenforceable in South Carolina. The Agreement does not provide for a local Arbitrator. The Nearest Arbitrator is in Atlanta. The Arbitration agreements is through JAMS which has no local offices in

ELECTRONICALLY FILED - 2022 Sep 30 8:24 AM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004574

South Carolina.   The Arbitration Agreement further limits discovery and depositions which is unenforceable under the Federal Arbitration Act.   The Agreement is limiting, unconscionable and unenforceable.   Due to the unenforceability of the Arbitration agreement that was not explained to the Plaintiff when she began her employment and the significantly limiting parameters of the clause the Plaintiff has filed in Court where jurisdiction is enforceable.

## PROCEDURAL HISTORY

6.     That on December 8, 2021, the Plaintiff filed a charge of discrimination with the EEOC alleging Religious Discrimination and Retaliation.

7.     That the Charge of Discrimination set forth the following:

> *I was denied accommodation on or about December 3, 2021.  I began my employment on or about January 20, 2020.   My current position is Patient Diagnosis Liaison for Medical Affairs, the job duties of which can be done remotely.   On or about June 30, 2021, my employer began mandating that all employees be fully vaccinated or submit to weekly testing as a condition of employment.   The mandate was later changed demanding employees be fully vaccinated.  I sincerely hold a religious belief that conflicts with my employer's vaccination requirement.   I requested a religious exemption to Respondent's Covid-19 vaccination mandate, which was denied.   I contend that my employer failed ot accommodate me because of my religion.*

> *I have been harassed and intimidated from on or about June 30, 2021, and continuing.   After I requested an exemption to its vaccination mandate, my employer delayed responding to my request for accommodation for almost 6 weeks.   However, on two separate occasions the corporate attorney and human resources grilled me, asking what I perceived as intrusive, overreaching, and inappropriate questions that essentially require me to prove my faith.   I contend that I am being treated in this matter because of my religion and in retaliation for requesting accommodation.*

> *I believe I have been discriminated against because of my religion (Christian) and in retaliation for engaging in an activity protected by the South Carolina Human Affairs Law, as amended Title VII of the Civil Rights Act of 1964, as amended.   I*

ELECTRONICALLY FILED - 2022 Sep 30 8:24 AM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004574

*further believe that my employer discriminated against others because of their religion, in violation of Title VII of the Civil Rights Act of 1964, as amended.*

8.    On March 10, 2022, the Plaintiff filed a second charge of discrimination setting forth the following:

*I.     That I am a former employee of the Employer.*

*II.    That I previously filed a charge of discrimination on December 8, 2021.*

*III.    That this charge is to supplement the first charge as the first charge filed to state that I was terminated for complaining about religious discrimination and failing to accommodate my requests for religious accommodations.*

*IV.    That the charge filed to set forth a hostile work environment.*

*V.     That my employer discriminated against me due to my religion and request for accommodation.*

*VI.    My employer failed and refused to accommodate my religious request for accommodation.*

*VII.    That as a result of my requests I was subjected to a hostile work environment that was severe and pervasive.*

*VIII.   As a result of my requests, I was terminated from my employment for requesting protection pursuant to Title VII.*

*IX.    That I was subjected to a hostile work environment based on Religious Exemption/Accommodation requests in violation of Title VII.*

9.    That the EEOC failed and refused to conduct a thorough investigation into the Plaintiff's Charge of Discrimination and issued a Right to Sue on September 6, 2022.

---

ELECTRONICALLY FILED - 2022 Sep 30 8:24 AM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004574

10.   The EEOC Right to Sue set forth "Notice to the Person Aggrieved:  Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):  This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge.  It has been issued at you request.  Your lawsuit under Title VII, the ADA, or GINA must be filed in the Federal or State Court within 90 days of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)  More than 180 days have passed since the filing of this charge.  The EEOC is terminating its processing of this charge.

11.   That not more than 90 days have passed since the issuance of the Right to Sue.

## FACTS

12.   That the Plaintiff was employed with Amplity as a contract employee (Patient Diagnosis Liaison) for Ultragenyx Pharmaceutical from January 24, 2020 to March 15, 2021.  The Plaintiff was hired by Kristin Barnes.

13.   The Plaintiff was sent to San Francisco for training in January of 2020.

14.   In February of 2020, COVID hit, and all employees were required to work from home.

15.   In November of 2020, the Defendant set forth several dictates regarding working in the field.

16.   In November of 2020, the Plaintiff was required to work the state of North Carolina in addition to her own duties until a new hire was made for that area.

17.   On February 5, 2021, the Plaintiff was informed by Nikky Ugwuoke of UGX that the Defendant wanted to hire her full time.

ELECTRONICALLY FILED - 2022 Sep 30 8:24 AM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004574

18.     On February 16, 2021, the Plaintiff received an official offer from Ultragenyx.  The offer letter set forth the Plaintiff would be a regular, full-time exempt employee of the company as a Patient Diagnosis Liaison, who would report directly to Nikky Ugwuoke.  The Plaintiff's position was to be completely remote.  The Plaintiff's base salary was $134,000.00 with opportunity for a bonus and several other benefits.

19.     The Plaintiff received an employee handbook setting forth the Defendant's policies and procedures.  The employee handbook set forth the terms of employment, workplace accommodations, addressing employee concerns and complaints, open door policy, problem solving, Employee Conduct Guidelines, etc.

20.     At no point and time, during the Plaintiff's employment was her performance as an employee addressed.  The Plaintiff was considered an exemplary employee at all times, exceeding all goals as set forth by the Defendant.

21.     The Defendant was constantly pushing Inclusion and Diversity.  However, ignored the Plaintiff's religious beliefs and failed and refused to accommodation her during the pandemic.

22.     On March 10, 2021, the Plaintiff received a request to train the new hire in North Carolina.

23.     On March 5, 2021, the Plaintiff was required to sign several documents regarding her employment.  One of those documents was an Arbitration Agreement.  The Plaintiff did not discuss this agreement with anyone and was not aware of the consequences of the agreement at that time.

ELECTRONICALLY FILED - 2022 Sep 30 8:24 AM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004574

24.   The Plaintiff's first official day with the Defendant, Ultragenyx Pharmaceutical on March 16, 2021.

25.   On March 18, 2021, the Plaintiff received an email from the VP of the Patient Diagnosis Program, Marisa Ricci, congratulating the Plaintiff for joining UGX and stating that she was an amazing asset to the organization.

26.   On April 1, 2021, the Plaintiff was congratulated for helping Best Practice Workshop for training new hires.

27.   On April 26, 2021, the Plaintiff was presented with the UltraRare Award by the Defendant.

28.   Throughout the Plaintiff's employment with Amplity and UGX the Plaintiff was considered an exemplary employee.

29.   On June 22, 2021, the Defendant issued a Power Point Reviewing the Return-to-Work Guidelines for the Ultragenyx.   The Return-to-Work requirements included full vaccination or submit to weekly testing.   Ugwuoke informed the Plaintiff that the vaccination or weekly testing requirement was mandatory.

30.   On June 28, 2021, The Plaintiff received an email from Shannon Joseph, Lab Operations Consultant requesting if the Plaintiff had received consent forms for the COVID testing.

31.   As a result of the notification the Plaintiff requested the testing kits.

32.   As a result of the request for the testing kits the Plaintiff was sent several forms including Consent to COVID-19 Diagnostic PCR and/or Antibody Testing, which set forth COVID 10 Testing Process and Specimen Collection Potential Risks and Benefits of COVID-19 Test.   The Forms also included a confirmation of Consent for COVID-19 Diagnostic PCR

ELECTRONICALLY FILED - 2022 Sep 30 8:24 AM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004574

and/or Antibody Testing.  The Plaintiff received a consent form that she did not expect or agree with.

33.    On June 29, 2021, the Plaintiff sent an email to Shannon Joseph, Lab Operations regarding the COVID testing consent forms received on June 22, 2021.  The Plaintiff submitted several issues with regarding the new mandatory COVID protocols for field personnel.

The Email set forth the following:

*1-  Ultragenyx should not have access to my personal health information evidence if I'm vaxed or not or status of my COVID tests.*
*2-  These tests are not FDA approved, only for emergency use only, as are the vaccines.*
*3-  I live in South Carolina and also cover parts of Georgia where these mandates are not required.  I don't have any Ultragenyx facilities in proximity to me that I would visit and I only visit HCP offices that allow me to be there.*
*4- The CDC doesn't require weekly testing, only to wear a mask if not vaccinated. And, they acknowledge that asymptomatic spread is not a reality.  I provide information on my attestation forms that I am aware of the COVID symptoms and protocols.  I also take my temp, social distance and wear masks while in HCP offices.  I would never work in the field if I had any symptoms anyway.*
*5-  The field personnel returned to work in our respective territories nine months ago and I have willfully complied with all the return to work policies.  So, I don't understand the urgency for these new mandates now.  And for how long will this be required?*
*6-  The PCR tests are proven to be extremely unreliable with false positives.  To be quarantined for two weeks when I'm not really sick affects my job.  And, who else is notified of the test result?*
*7- Finally, it is known that I would be terminated if I choose not to comply.  The consent letter I'm told to sign for weekly testing states that I may not be successful in my job if I am not in the field and the virtual only (work from home option) ends in August.  This leaves me with no options.  Either I comply with weekly testing and sign a consent I don't agree with or I have no future with Ultragenyx.*

*Because I have a family to support, because Ultragenyx will allow for saliva based testing and because I believe in my work, love the team I work with and genuinely care for the patients we are serving, I will sign this form for saliva based testing.  Thank you for allowing me to share my true feelings on this matter.*

ELECTRONICALLY FILED - 2022 Sep 30 8:24 AM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004574

*I hope my convictions and beliefs on this matter would allow Ultragenyx to reconsider these parameters.  Thanks again.*

34.   The Plaintiff believed the email to be confidential.  However, Joseph forwarded the Email to Eric Knight, Heat of Global EHS and Sustainability, who forwarded the Email to Bobby Leonard, Corporate Attorney.  Eric Knight specifically informed the Plaintiff "Thank you for sharing your concerns.  Shannon forwarded to me as I facilitate the COVID Task Force.  I've copied Bobbi as she represents Legal on the Task Force.  Please Reach out to Bobbi as a resource if you would like any additional clarification regarding concerns."

35.   As a response to the email forwarded to Ms. Leonard, Ms. Leonard sent the Plaintiff an email that was an attempt to intimidate and bully the Plaintiff.

36.   On July 1, 2021 Sandy Schaumleffel part of the COVID-19 Taskforce sent the Plaintiff and email stating that all U.S. Team members were required to submit their vaccination status by July 12.  However, any employees outside the U.S. were not required to submit the status.

37.   On July 6, 2021, the Plaintiff signed several forms regarding COVID-19 Testing and Test Results due to the intimidation by the Defendant's management and corporate counsel.

38.   The Plaintiff began weekly testing in order to work in the field.  The Plaintiff was 100% compliant in FedExing testing every week.

39.   On July 12, 2021, the Defendant published an Attestation of no COVID019 Symptoms/Agreement for Field Teams to Attend in Person Meetings.  It set forth that the form "must be completed each day, prior to any in-person (not virtual) meetings with any

ELECTRONICALLY FILED - 2022 Sep 30 8:24 AM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004574

business contact.  By physically engaging with a customer or entering a client site (e.g. field visit to a clinic, office, institution).  You are attesting to the fact that you have completed this form prior to doing so.  Information collected on this form will only be viewed and accessible by select individuals in the Ultragenyx HR or EH&S teams.  Your responses will be kept confidential and only shared on a need to know basis.  Note that in an emergency situation (such as COVID-19), Ultragenyx has an obligation to take necessary steps to inform impacted parties of potential exposure, and will do so without naming any particular individuals."  The document went on to state "Hi Kim, when you submit this form, the owner will be able to see your name and email address."  The form asked such questions as what the your field position is, do you have an appointment, what office visiting, whether you have assessed the local, regional and state guidelines to travel and quarantines, and whether you had taken your temperature today.

40.    On July 21st the Plaintiff received emails pushing vaccinations and encouraging all employees to submit their vax status.  The Plaintiff constantly informed the Defendant that she would not be getting the vaccine due to her religious beliefs.  However, the Defendant and management continued to push the vaccination and violate the Plaintiff's religious freedoms.

41.    On July 22, 2021, the Plaintiff received an Email from Camille Bedrosian pushing vaccines and recommending Pfizer and MODERNA.  The email stated the following:

*Dear Ultra Team,*

*We have been on quite a journey together these ~18 months, living through this pandemic alongside each other. The concern I have is a deep concern for you, our community of esteemed colleagues, and dear friends. I now feel compelled to*

ELECTRONICALLY FILED - 2022 Sep 30 8:24 AM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004574

highlight for you the increasing risk posed by the Delta and Delta-plus variants and what you can do to keep you and your loved ones healthy and protected.

*The Delta Variant*
What I have learned about the Delta variants so far is deeply concerning to me, as they are rapidly advancing – with transmission being possible after only a few seconds of exposure for those non-vaccinated. Unfortunately, these variants will lead many more people to become extremely ill and possibly suffer long-term impacts on their health. Even those vaccinated can contract the Delta variant (unbeknownst to them, as they may not show any symptoms) and then they can become carriers of the virus to those that are unvaccinated, who may ultimately become very ill or even hospitalized. In these circumstances, being vaccinated doesn't just benefit you – it's protecting those around you and their loved ones as well.

*Vaccines are Changing the Dynamic*
I know that all of us are facing a myriad of different challenges as we continue to navigate these uncharted waters. However, I do consider vaccines to be an important light on our path, and quite possibly the only way we get back to a semblance of normal. To date, the mRNA based vaccines (from Pfizer/BioNtech and Moderna) have excellent safety data – and have made it clear that vaccination is powerful in preventing serious disease, even with the Delta variants.

*Long COVID-19 is Real*
I also have to highlight here that a COVID infection, whether a Delta variant or not, is not like a cold or flu. It can have long-term consequences. One comprehensive study out of Norway showed that 61% of patients (189/312) had persistent symptoms after 6 months, independent of severity of initial illness or pre-existing lung conditions (Blomberg et al, Nat Med 2021). In this same study, researchers found that 61 young (16-30 years old) with mild COVID still had symptoms 6 months later, including loss of taste and/or smell, fatigue, shortness of breath, impaired concentration, and memory problems. I don't say this to alarm anyone; I say this to emphasize why we need to do what we can to prevent the spread of this awful disease.

*Additional Thoughts*
Please also know that I understand there remains a variety of reasons why some are reluctant to get vaccinated. If you decide to get vaccinated, which I strongly encourage you to do if you have not yet and are not prohibited by medical reasons – I personally would recommend getting one of the mRNA vaccines from Pfizer or Moderna. Based on the current data, these two vaccines so far seemingly are the best choices to protect you against severe symptoms or hospitalization. If you need to take time off work to get vaccinated Ultragenyx will

ELECTRONICALLY FILED - 2022 Sep 30 8:24 AM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004574

*give you the necessary time to get your vaccine and recover from any side effects should you experience any.*

*I look forward to the day when this pandemic is long behind us all, and the worry of this virus infiltrating our lives has subsided. Thank you for letting me share my concerns and thoughts with you as we continue to navigate this very challenging journey together. No matter what, please remember that your health and safety – along with those of your loved ones and our entire human community – remain my top priority and a great part of my purpose.*

*I know we're all busy, but if you are unsure about whether vaccination is the choice for you, please feel free to reach out to me or my assistant Adele to schedule some time with me to talk. I would be grateful for the opportunity. In addition, I am sure Emil would welcome such a discussion as well; and his assistant Beverley could schedule the time.*

*Please, please get vaccinated if you medically can. Thank you!*

*All the best*
*Camille*

42.    On July 26, 2021, Sandy Schaumleffel sent the Plaintiff an emails stating the following:

*Dear Ultra Team Member,*

*Our records indicate that we have not yet received your vaccination status. Please take a moment this week to submit your information (here). Your vaccine status will be kept highly confidential on a secure site, with only a few designated and specially trained staff members who are able to access this information.*

*As a reminder, we are requiring all U.S. team members to report their vaccination status, whether vaccinated\* or not due to the expansion of our return to the workplace opportunities and as we look to make informed decisions to help us navigate everyone's well-being during this pandemic, particularly with the presence of the new Delta variants that are known to spread more easily and quickly.*

*Report Vaccination Status Here*
*\*If you are vaccinated, per company policy, please submit your official record/vaccine card (you may redact personal information such as date of birth or medical #) or CA digital vaccine record.*

ELECTRONICALLY FILED - 2022 Sep 30 8:24 AM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004574

*Should you have any questions, please reach out to COVID-19@Ultragenyx.com or you can check out our FAQ here.*

*All the best!*

*Your COVID-19 Taskforce*

43.  On July 27, 2021, the Plaintiff received documentation from the Defendant stating that UGX would not require any employee to be vaccinated for COVID-19 and only will require weekly testing.  The document set forth frequently asked questions, date when specimen should be dropped, the time for results, priority project exceptions, requirement of working remotely until a negative test is obtained.

44.  On June 29, 2021, the Plaintiff notified the Defendant that she was not comfortable or in agreement with the Defendants' COVID protocols for field personnel but she would cooperate.  Ms. Beasenburg was concerned for her personal health information being published, the fact that the tests were not FDA approved, that where she was located many of the mandates issued by the California company were not required, CDC requirements of mask wearing/no weekly testing required, how she has complied with all requirements, the fact that PCR tests are extremely unreliable, quarantining for 2 weeks when she is not sick, and finally being terminated because she refused to get a vaccine if the mandate were placed in effect.  The Defendant ignored Ms. Beasenburg's complaints and brushed them off.  Ms. Beasenburg's complaints and concerns were legitimate concerns regarding the vaccines and policies and procedures of the Defendant.

45.  On August 10, 2021, the Plaintiff received an email from Sandy Schaumleffel Subject line:  Time to submit your Vaccination status.  The email stated that Ultragenyx had not

ELECTRONICALLY FILED - 2022 Sep 30 8:24 AM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004574

received the team members vaccination status.  It also stated that the vaccination status would be kept confidential.  The Email went on to state "As a reminder, we are requiring all U.S. team members to report their vaccination status, whether vaccinated or not due to the expansion of our return to the workplace opportunities and as we look to make informed decisions to help us navigate everyone's well-being during this pandemic, particularly with the presence of the new Delta variants that are known to spread more easily and quickly."

46.     On August 18, 2021, the Plaintiff was selected to organize a workshop for a National Meeting in September.

47.     On August 31, 2021, the Plaintiff received another email pushing the vaccines (MODERNA and Pfizer) from the Chief Executive Officer and President of Ultragenyx Pharmaceutical, Inc. D. Kakkis, M.D., Ph.D.

*Dear Ultra Team,*

*Today, I'm taking a moment to share my concern about the COVID-19 Delta and Delta-plus variants that are surging across the globe. At this point, anyone who is unvaccinated now risks contracting COVID-19 with one of the Delta variants at a significantly higher rate than when this pandemic first started. We can no longer sit by and wait for herd immunity or for this wave to wash over us – we must take steps both individually and collectively to beat this pandemic for the good of our greater communities and the world.*

*It is clear from the statistics that being unvaccinated can harm yourself and others, and once that happens, there is no going back. And, now, with the Delta variants showing up everywhere, unvaccinated people can get infected and sick after only a few seconds of exposure – putting all of us, our children, our parents, and those with weakened immune systems at risk. Whole families are being wiped out now including kids and teenagers because of no one being vaccinated and the higher viral exposure level to your close contact family members that worsens transmission of lethal disease. Being the source of a transmission to a tragedy can't be fixed later and can be devastating all around. There are stories after stories where those who were unvaccinated are filled with deep regret that they*

ELECTRONICALLY FILED - 2022 Sep 30 8:24 AM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004574

*never acted and got their vaccination, sometimes begging to be vaccinated just before being intubated when of course, it's far too late. Many would do it all differently if they had the chance. And, I certainly don't want this to happen to any of you or your loved ones, where regret becomes all-consuming and brings great heartache.*

*I want to remind everyone that long COVID-19 (the long-term health effects COVID can have) is a disease that is not to be taken lightly. It is not like the flu or a cold. It has long-term consequences, including lasting shortness of breath and cognitive symptoms at 6 months out or longer. One of my friends from high school has just become chronically ill from COVID-19 and cannot seem to get over it – constantly fatigued and foggy. These symptoms are not rare. It is very common. I've noted below a few pieces of data to show the impact this virus can have on the human body.*

*61% (189/312) of all patients in a comprehensive study out of Norway had persistent symptoms at 6 months(symptoms independent of the severity of initial illness, increased convalescent antibody titers, and pre-existing chronic lung disease)*
*Sixty-one (61) young, home isolated adults (16-30 yrs of age) with mild COVID-19 in this study had symptoms at 6 months, including loss of taste and/or smell, fatigue, shortness of breath, impaired concentration, and memory problems (Blomberg et al, Nat Med 2021)*

*On top of all this, remaining unvaccinated increases the risk of creating more COVID-19 variants. All viruses mutate –- that's in their nature. Some mutations don't change the virus and some may even make the virus weaker, but those aren't the variants that persist in our communities. The mutations that make the virus even more transmissible and result in stronger symptoms; it's those mutations that will lead to more outbreaks, as we've seen with Delta. These variants evolve in the body of a person infected with the virus, so remaining unvaccinated allows you to become a source of potential new COVID-19 variants. We can all agree we want this pandemic to be over; please don't allow yourself to be the reason we have to navigate the theta or kappa variants.*

*I come to you not only as your CEO and a medical professional, but also as a concerned fellow community member – if you haven't been vaccinated yet, I strongly urge you to get vaccinated today – please. I care about each of you and believe strongly that getting vaccinated will protect everyone against the rising of the Delta variants. Personally, I would recommend getting one of the mRNA vaccines from Pfizer (FDA approved) or MODERNA (likely to be FDA approved soon) as the best choice for Delta and in general. The safety has been excellent, and the results powerful in preventing severe disease, even with Delta.*

ELECTRONICALLY FILED - 2022 Sep 30 8:24 AM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004574

*Let's all stick together to get through this pandemic and protect those who cannot be protected by the vaccine. There are many ways to do this very thing – from getting fully vaccinated, masking up when in public, keeping safe distances from one another, as well as educating, encouraging, and supporting one another during this time. So, please join me in the fight against this despised pandemic and get vaccinated if you haven't already.*

*My continued wish for all of you and your loved ones is health – one of the most significant assets we can have. My whole family was vaccinated with one of all three vaccines as soon as it was possible. Please do the same.*

*With respect and concern for the Ultragenyx family,*

48.    On September 23, 2021, the Plaintiff received an email from Ernie Meyer, Chief Human Resources Officer that the Defendant would now be requiring *All U.S. team members to be fully vaccinated.*  The email further informed the Plaintiff that the vaccination requirement was limited to the United States.  No other region including Latin America, or Europe was required to subject themselves to the vaccine nor were they required to reveal their vaccination status.  The Defendant issued a Frequently Asked Question forms with the mandate informing employees that "With the Delta variants being more intense and becoming increasingly more present, we have reached a pivotal and critical point in time as an organization to decide how we will help safeguard our team members from contracting and spreading the virus while at work, and thus protect the health and safety of our team, as well as our external communities-both professional and personal.  As we've learned from the latest data, which has been reinforced by insights provided by Emil and Camille, the COVID-19 vaccines are incredibly effective.  We do recognize that not everyone will agree with this decision, but it's important to know we made it from a place of compassion and concern for our team and this virus's impact on our

ELECTRONICALLY FILED - 2022 Sep 30 8:24 AM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004574

ability to help our patients, as well as all humans across the globe who are struggling at this time." The Vaccine mandate was not a global requirement for the Defendant it was only in the U.S. There were no exceptions. Even if you worked remote 100% you were still required to have the vaccine.

49.     As a result in the shift in vaccination requirement the Defendant began to threaten compensation penalties if the employees were not immediately vaccinated.

50.     The Plaintiff is informed that only remote roles may apply for an exemption. The Plaintiff's position at all times was remote.

51.     The Plaintiff is also informed that ANYONE can apply for an exemption/accommodation.

52.     On October 12, 2021, the Plaintiff is hand selected to become part of the BONE PDL team which groomed her to into the pipeline and clinical trial side of the business. The Plaintiff was still required to maintain her XLH PDL role along with the new role in Bone PDL. The new role was considered a promotion but did not come with any increase in compensation. The role required the Plaintiff to find patients through HCPs willing to participate in a clinical trial for Osteogenesis Imperfecta. The role included a multistate territory and Puerto Rico. Due to the combination of the other position with this new role there were several employees who addressed concerns of being able to maintain all goals. Molly Megay, National PDL director for the new role informed all employees that the new position could be performed at home.

53.     On October 18, 2021 Justelle Engelhard sent the following email despite the Plaintiff's requests for an accommodation/exemption:

ELECTRONICALLY FILED - 2022 Sep 30 8:24 AM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004574

*Hello UltraTeam Member,*

*As a follow-up to the communication you received on October 1, I'm reaching out to let you know that for business planning purposes, Ultragenyx is looking to understand your current vaccination status and whether you plan to meet the Company's vaccination requirement by being fully vaccinated and reporting that vaccination status by January 3.*

*To let us know your intent, simply select at this link or reply to this message no later than Monday, November 1.*

*Please note that in early November, we will be providing each XLT member, functional VP, and direct manager a list of the roles within their respective teams that are at risk of being vacated on January 3. This list will include roles currently held by individuals who have either 1) confirmed they are not fully vaccinated and do not have an approved accommodation or exemption; or 2) not yet reported their vaccination status and do not have an approved accommodation or exemption. Click here if you would like to apply for an accommodation or exemption.*

*As a reminder, per CDC – if you plan to get vaccinated before January 3, keep in mind that the timing to become fully vaccinated varies depending on the vaccination you select. For instance:*

*If you choose to go with a Pfizer or Moderna vaccine, you are considered fully vaccinated 2 weeks after your second dose in a 2-dose series – so, if you plan to meet the company requirement, you should get your first dose no later than mid-November.*

*If you choose to go with Johnson & Johnson's Janssen vaccine, you are considered fully vaccinated after 2 weeks after their single-dose – so, if you plan to meet the company requirement, you should plan to get this vaccination no later than mid-December.*

*If you are in the process of getting vaccinated or are fully vaccinated, please submit your vaccination records (here).*

*You can also find additional answers to questions (here) related to vaccinations. However, please don't hesitate to reach out to me directly or the COVID-19@Ultragenyx.com team should you have any other questions or would like to discuss further.*

*Thank you in advance for your reply.*

ELECTRONICALLY FILED - 2022 Sep 30 8:24 AM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004574

*Be well,*
*Justelle*

54.    In response to the October 18th email the Plaintiff requested "who specifically will make the decision to approve/disapprove these accommodations/exemptions and who else reviews my form? What criteria is used to evaluate my request and how or why would it be denied?"  The Plaintiff was suffering a constant bombardment from the Defendant regarding obtaining a vaccine despite her sincerely held religious belief.

55.    On October 21, 2021, Nathan Rapp informing the Plaintiff that her accommodation request would be reviewed by the accommodation review team.  They would review feasibility of a requested accommodation and level of burden that accommodation places on the company.

56.    At no time, was the Plaintiff's request a hardship to the company due to the Plaintiff's work being 100% remote.

57.    On November 21, 2021, Nathan Rapp with HR informed the Plaintiff that all decisions regarding exemption/accommodation are made by HR, Management and the Plaintiff's direct manager, Angela Haney.  However, Haney informed the Plaintiff she was never made aware of the Plaintiff's request for exemption/accommodation.

58.    On October 26, 2021 the Plaintiff submitted a detailed religious exemption request form. The Plaintiff printed out the form and included handwritten notes to set forth her contentions. Nathan Rapp instructed the Plaintiff to complete the religious exemption electronic form as it was supposed to be completed.  The Plaintiff declined to do the form as instructed by Rapp.

ELECTRONICALLY FILED - 2022 Sep 30 8:24 AM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004574

59.     On November 15, 2021, the Plaintiff received a request from Nathan Rapp for a Zoom Meeting to brainstorm about her accommodation request and for her to respond to a couple questions regarding her exemption request form.

60.     On November 15, 2021, Justelle Engelhard, Medical Profession: Return to Work Administrator sent the Plaintiff an email stating the following:

*Dear Kimberly,*

*As previously communicated, since you have not yet submitted evidence that you are fully vaccinated and you have not received an approved accommodation or exemption – the EH&S team has notified your management team (including your XLT leader, HR business partner, departmental VP, and your direct manager) that you are at risk for leaving Ultragenyx after January 3.*

*Your HR business partner will also reach out to you shortly to schedule time to begin discussing your potential transition plans and answer any questions you may have on the next steps.*

*If anything has changed in terms of your vaccination status, please feel free to let me know, and I will be sure to update our records and your management team accordingly.*

*Please reach out directly to your HR business partner for any other questions related to your potential departure from Ultragenyx.*

61.     The Plaintiff responded to the November 15, 2021 email with:  "*I have a call to discuss accommodation/exemption plans on Thursday with Nathan Rapp and Bobbie Leonard. So why is it assumed I'm leaving?*"

62.     On November 15, 2022, Nathan Rapp Responded with "*Thanks for reaching out.  It is not assumed that you are leaving.  This is a notice sent to everyone who were not either fully vaccinated or had not received an accommodation/exemption.  We are aware that you and others are in the process of seeking an accommodation and we will be speaking to you later this week about it (thanks for accepting the calendar invite.).*"

ELECTRONICALLY FILED - 2022 Sep 30 8:24 AM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004574

63.   On November 18, 2021, the Plaintiff participated in a conversation with Bobbie Lenard and Nathan Rapp. The Plaintiff was uncomfortable felt as though she was being bullied and felt the meeting was very hostile. Many of the questions were inappropriate. The Plaintiff's concerns for her religious freedoms and rights under the law were blatantly dismissed by all participants.

64.   The Plaintiff received several phone calls from managers stating how well she was performing in all aspects of her position.

65.   On November 22, 2021, the Plaintiff received an email from Leonard and Nathan setting forth the following:

*Thanks again for your time this past Thursday. Below is an overview of our discussion, including the agreed upon next steps. If you have any additional context to add to any of the below, please let us know.*

*You noted that you are a PDL for the XLH team for South Carolina and the lower half of Georgia, and that you were also recently added to the bone PDL team covering OI for all of the Southeast.*
*You indicated that you are a member of the Baptist denomination of Christianity and that you rely on the Bible for direction/guidance, but that you sometimes look into stances from Baptist leadership as well.*
*I asked you to provide information regarding any other medications (including vaccinations) that you refuse to take due to the use of fetal cell lines in the development/manufacturing.*
*You declined to answer this question and stated that you will respond later in writing if you feel it's appropriate to do so.*
*I asked you if you can explain what your process is for determining whether or not you are able to take a new medicine (i.e. whether the medicine has a fetal cell history in development/manufacturing).*
*You declined to answer this question and stated that you will respond later in writing if you feel it's appropriate to do so.*
*You mentioned that the nasal swab covid testing is an intrusion on your body in opposition of your religion; but you stated that you are comfortable taking the saliva-based covid testing because it does not "go into your body."*
*I asked you whether you regularly interact with other unvaccinated individuals in-person outside of work and to the best of your knowledge.*

ELECTRONICALLY FILED - 2022 Sep 30 8:24 AM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004574

*You declined to answer this question and stated that you will respond later in writing if you feel it's appropriate to do so.*
*You stated that you do go to church services in-person on a regular basis; but declined to address the frequency and did not state whether or not you knew individuals you interact with in-person during services are vaccinated or not.*
*We talked through the following potential accommodation ideas:*
*Accommodation Idea #1: continue to operate as you have been as a PDL, with continued testing and mask wearing requirements*

*As discussed, Nathan and I will talk with your leadership about your proposed accommodation and will get back to you soon. In the meantime, if you think of any other potential reasonable accommodations, please let us know as soon as possible.*

66.    On November 23, 2021, the Plaintiff responded to the Defendant's email stating the following:

*Thank you Bobbi for the summary.  My faith is very genuine, and I get my strength and guidance through prayer and the Bible.  I do my imperfect best to live by my faith in Christ.  With that said, I explained on our call that these questions were overreaching and intrusive.  You stated these questions asked of me were lawful and I don't agree.  I shouldn't have to corroborate my sincerely held faith to such extent as to who I hang out with and medicines I take or refuse to take, etc.*

*I asked what data you referred to when you were talking about unvaxed socializing with other unvaxed being a increase in transmission.  Are you able to provide?*

*I asked what the basis for this mandate is… and you said, health and safety. Again, how is it determined I'm unsafe or unhealthy?  I'm not sick.  If I were, I'd stay home.*

*I also asked Nathan in earlier email, who specifically makes the decision to approve/disapprove my exemption and what criteria is used to determine that decision?  I'd like more detail on that please.*

*Lastly, I meant to ask on our call, why aren't the vaccinated employees getting tested weekly?*

*As for accommodation, the only other consideration I have would be to work remotely on pipeline (bone team or pipeline) or reimbursement management*

ELECTRONICALLY FILED - 2022 Sep 30 8:24 AM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004574

*team.  As said earlier, I'd prefer to continue doing my job as I have been for the last year and continue to do so… in the field.*

*This has caused me a lot of stress and anxiety and, I've complied and waited long enough.  Please respond to my exemption quickly.  Thank you for understanding.*

67.    On November 24, 2021, Bobbi Leonard responded to the Plaintiff's email with the

following:

*Hello Kim,*

*If you would like to know what data the XLT relied on when it decided to require vaccination (including information about transmission rates among unvaccinated individuals), I encourage you to reach out to your XLT member (which I believe is Camille Bedrosian). Nathan and I did not set the policy, so unfortunately we don't have access to that data.*

*Accommodation requests are reviewed and decided upon by your leadership team, which in your case includes Marisa Ricci, Phil Hornick, Camille Bedrosian, in consultation with your HRBP (Francine Zelaya) and the accommodation review team (Nathan and I).*

*If you have questions about current COVID testing policy and protocols, please reach out to covid-19@ultragenyx.com.*

*Thank you for the sending along your additional accommodation idea; we will be sure to discuss those options with your leadership team. Due to busy calendars and vacation schedules, we haven't been able to meet with your leadership yet, but we should be able to get back to you by next week. We completely understand the stress this circumstance may cause and are trying to expedite resolution as much as possible.*

*If you have any questions in the meantime, please let us know.*

*Thank you,*
*Bobbi*

68.    On December 16, 2021, the Plaintiff was informed by Bobbie Leonard that she would be

transitioning form her employment, which is essentially terminated from her position for

a failure to be vaccinated.

ELECTRONICALLY FILED - 2022 Sep 30 8:24 AM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004574

69.    On December 21, 2021, The Plaintiff received recognition form Reid Elliot Congratulating the Plaintiff with 250 points.

70.    On December 21, 2021, the Plaintiff received an email from Leonard setting forth the following:

*Hi Kim,*

*I write to remind you of next steps regarding your accommodation request to the January 3rd covid vaccine requirement. At this time, the only accommodation we have been able to grant you is an unpaid leave of absence, which will start on January 4th. You will use PTO at the outset, with your benefits extending to the end of the month during which your PTO was exhausted. As of today, your PTO balance is 76.40 hours. As a reminder, any equity vestings you may have would continue for the first 90 days that you are unpaid leave. You will be taken off unpaid leave if 1) you become fully vaccinated and report your status as such, and there is still work available for you to return to; 2) the vaccine requirement is lifted and there is still work available for you to return to; 3) circumstances are such that there is a lack of work for you to return to; or 4) you obtain a new job elsewhere. Please let me know if you have further questions about this option.*

*We also informed you of an alternative option of mutual separation from the company with some transition assistance, in exchange for a signed release. The Transition Assistance and Release Agreement was sent to you on December 16th. As a reminder, this is a confidential offer and if you elect to proceed this route, you will need to confirm that you've kept the offer and its terms confidential (other than immediate family and financial/legal advisors), otherwise you will no longer be eligible for the transition assistance. You have until 5pm PST on January 7, 2022 to sign this agreement and opt for the transition assistance. Note that while you cannot sign before January 4th, you do not need to wait until January 7th to sign. The offer will remain open until 5pm PST on January 7th unless you have not kept the transition assistance offer and its terms confidential.*

*Lastly, please note that come January 3, you are not permitted to conduct any in-person interactions on behalf of Ultragenyx, including in-person meetings with colleagues, customers, clients, or vendors.*

*In light of the above, unless we hear otherwise from you, please note that you will be placed on unpaid leave starting January 4th. Going on unpaid leave does not affect your ability to opt for mutual separation with transition assistance, so long as we receive your signed agreement after January 3rd but on or before January*

ELECTRONICALLY FILED - 2022 Sep 30 8:24 AM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004574

*7th. The date we receive your agreement will be considered your last day of employment at Ultragenyx.*

*Please let Nathan and I know if you have any questions or would like to discuss.*

71.  On January 3, 2021, the Plaintiff informed the Defendant that her separation was not a mutual separation due to the fact that the Defendant denied her religious exemption.

72.  At all times the Plaintiff expressed her concerns regarding the safety and efficacy of the vaccine, her faith, her religious faith was tantamount.  However, the Defendant chose to ignore her concerns.

73.  At all times, Nathan Rapp and Bobbi Leonard were dismissive and condescending in all their dealings with the Plaintiff.

74.  The Defendant failed and refused to accommodate the Plaintiff's sincerely held beliefs.

75.  That the Plaintiff complained about the Defendant failing to grant her an exemption and accommodate her religion.  The Defendant fired her from her employment in retaliation for her complaints regarding discrimination.

76.  That as a direct and proximate result of the Defendant's intentional and unlawful action of wrongfully suspending the Plaintiff, wrongfully terminating the Plaintiff, the Plaintiff has suffered lost wages, emotional damages, compensatory and consequential damages.

77.  That the Plaintiff is entitled to an award of all damages available under the law for the actions of the Defendant discriminating against her based on her religion, failing to accommodate her request, subjecting her to a hostile work environment because of her requests, and retaliating against her by terminating her employment.

ELECTRONICALLY FILED - 2022 Sep 30 8:24 AM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004574

## FOR FIRST CAUSE OF ACTION

## RELIGIOUS DISCRIMINATION IN VIOLATION OF

## TITLE VII

78.   That Paragraphs one (1) through seventy-seven (77) are hereby incorporated verbatim.

79.   That the Plaintiff has been treated differently based on her religion.

80.   That the Defendant allowed the Plaintiff to be discriminated against based on her religion in violation of the laws and their own policies and procedures.

81.   That the Plaintiff was considered an exemplary employee.

82.   That the Plaintiff properly requested an exemption from the COVID-19 vaccine in accordance with the law and the policy of the Defendant.

83.   That the Defendant failed and refused to grant the Plaintiff an exemption contending that her religious beliefs were not sincere.

84.   That the Plaintiff was subjected to differential treatment based on her religious beliefs.

85.   That the Plaintiff was subjected to ridicule and differential treatment based on her religion.  Other employees were not subjected to same ridicule or differential treatment. The Plaintiff was berated by management on whether or beliefs were sincere.

86.   That the Defendants discriminated against the plaintiff based on her Religion.

87.   That the Defendants took adverse employment action against the Plaintiff by:

(a)   Failing to protect the Plaintiff from discrimination based on her Religion;

(b)   Refusing to enforce its own policies;

(c)   Terminating her employment under pretextual reasons.

88.   That the Defendants subjected the Plaintiff to discrimination in violation of the law.

ELECTRONICALLY FILED - 2022 Sep 30 8:24 AM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004574

89. That, as a direct and proximate result of the Defendants' intentional, unlawful and discriminatory actions, the Plaintiff:

    (a)    Suffered severe emotional distress;

    (b)    Suffered lost wages and benefits;

    (c)    Suffered future lost wages and benefits;

    (d)    Incurred attorney's fees and costs of this action.

90. That the Plaintiff is entitled to an award of damages in the amount of actual damages, compensatory damages, consequential damages, punitive damages, attorney's fees, costs of this action, and other damages such as this Honorable Court deems appropriate and just.

**FOR A SECOND CAUSE OF ACTION**

**RETALIATION FOR COMPLAINTS REGARDING RELIGIOUS DISCRIMINATION**

91. That Paragraphs one (1) through ninety (90) are hereby incorporated verbatim.

92. That the Plaintiff is an employee as defined by State and Federal Law.

93. That the Defendant is an employer as defined by State and Federal Law.

94. That the Plaintiff has filed made complaints regarding religious discrimination.

95. As a result of those complaints the plaintiff has been treated differently and subjected to retaliation.

96. That the Defendant retaliated against the Plaintiff by terminating her employment for her requests and sincerely held religious belief.

97. That as a result of the Plaintiff's complaints the Plaintiff suffered retaliation for each of her complaints.

ELECTRONICALLY FILED - 2022 Sep 30 8:24 AM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004574

98.   That the Plaintiff was considered an exemplary employee.

99.   As a result of the Plaintiff's complaints regarding discrimination based on her religion, hostile work environment, and hostile work environment based on her previous complaints the Defendant retaliated against the Plaintiff by suspending terminating her employment and subjecting her to a hostile work environment.

100.  The Defendant's actions described herein were intentional and inflicted upon Plaintiff to insure severe mental and emotional distress.

101.  As a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity, and other intangible injuries for all of which he should be compensated.  Including, future losses related to refusals to provide appropriate raises and positions.

102.  That the Defendant is the direct and proximate cause of injury to the Plaintiff.

103.  That the Plaintiff is entitled to an award of damages from the Defendant.  That the Plaintiff is entitled to recover damages from the Defendant in the amount of actual damages, consequential damages, punitive damages, reasonable attorney's fees, the costs of this action and all other damages available pursuant to Federal and State Law.

**FOR A THIRD CAUSE OF ACTION**

**HOSTILE WORK ENVIRONMENT**

104.  That Paragraphs one (1) through one hundred and four (104) are hereby incorporated verbatim.

105.  That the Plaintiff was an employee of the Defendants.

ELECTRONICALLY FILED - 2022 Sep 30 8:24 AM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004574

106. That the Defendants are employers in accordance with Title VII, ADA and ADEA.

107. That the Defendants subjected the Plaintiff to a hostile work environment.

108. That the Plaintiff's work environment was abusive, to the point of severe and pervasive.

109. The Plaintiff was subjected to discrimination based on her Religion.

110. That the Plaintiff suffered severe emotional distress as a result of the Defendant's hostile work environment based on the Plaintiff's sincerely held religious beliefs and requests for exemption/accommodation.

111. That the Plaintiff's severe emotional distress was foreseeable as a result of the severe and pervasive work environment that the Defendant subjected the Plaintiff.

112. That the Plaintiff has been damaged as a result of the Defendant work environment.

113. That the Defendant is the direct and proximate cause of damage to the Plaintiff.

114. That the Plaintiff is entitled to actual, compensatory, consequential, and punitive damages from the Defendant for their actions.

## **PRAYER FOR RELIEF**

WHEREFORE plaintiff prays that this Honorable Court:

A. Accept jurisdiction over this matter, including the pendent claim;

B. Empanel a jury to hear and decide all questions of fact;

C. Award the Plaintiff lost wages, future lost wages, lost benefits and future lost benefits;

D. Award to plaintiff compensatory and consequential damages against the defendant;

E. Award to plaintiff All damages available to the plaintiff damages against the defendant for their malicious discrimination against the plaintiff in violation of Title VII;

ELECTRONICALLY FILED - 2022 Sep 30 8:24 AM - CHARLESTON - COMMON PLEAS - CASE#2022CP1004574

F.  Award to plaintiff the reasonable attorneys' fees and costs incurred in the prosecution of this matter;

G.  Award all damages available to the Plaintiff pursuant to State and Federal Law;

H.  Permanently enjoin the defendants, their assigns, successors, agents, employees and those acting in concert with them from engaging in religious discrimination, disparate treatment or retaliation against plaintiff and

I.  Enter any other order the interests of justice and equity require.

Respectfully Submitted,

s/Bonnie Travaglio Hunt
Bonnie Travaglio Hunt
Hunt Law LLC
Federal Bar # 07760
SC Bar # 12341
Attorney for the Plaintiff
4000 Faber Place Drive, Suite 300, N. Charleston, 29405
Post Office Box 1845, Goose Creek, SC 29445
(843)553-8709
Facsimile (843)492-5509
bthunt@huntlawllc.com

s/Peter Kaufman
Peter Kaufman
Kaufman Labor & Employment Solutions, LLC
SC Bar #100144
295 Seven Farms Dr. Ste C-267
Charleston, SC 29492
(843)513-6062
pkaufmanlaw@gmail.com

September 30, 2022